Joseph F. Gagliardi, J.
This is a proceeding brought by a father to prevent his former spouse, who has since remarried, from imposing her new surname upon the four children of their marriage. These children who are 14, 12, 9 and 7 years of age, respectively, are subject to the general custody and control of their mother by virtue of the terms of a separation agreement executed by the adults herein in 1960 and later incorporated as a provision of the Alabama decree of divorce which the mother obtained.
Due to the factual nature of the issues raised by the petition and response necessarily affecting these children as well as the adults in a most personal and important way, the court received testimony on the issues tendered.
The separation agreement dated February 11, 1960, contains the following clause: “ (h) The Husband and Wife agree that they will not by word or deed attempt to alienate the affections of any child from either parent to the other, but that, on the contrary, they will endeavor by all reasonable means and conduct to encourage and strengthen the affections of the children for both of their parents. Each of the Husband and Wife agrees that he or she will respect, and not belittle, the other’s play, training, educational and other programs or projects for the children.”
The father of these infants, who has not remarried, alleges that he has fulfilled all of the conditions of the separation agreement and the testimony adduced at the hearing supports this statement.
Addressed to the conscience of the court is the difficult but basic question of whether a parent can seek to enjoin the other *423 parent from unilaterally changing the children’s names. Justice Meter in his scholarly opinion in Matter of “Shipley ” (26 Misc 2d 204) expresses some doubt as to the propriety of issuing an injunctive order against a parent although the relief was denied in that case because the facts did not sustain the claim that the mother brought about a common-law change of the infants’ names. Decrees prohibiting a change of an infant’s name by only one parent, which change was objected to by the other parent, have been issued by courts of sister States (Margolis v. Margolis, 338 Mass. 416; Marie v. Kahn, 333 Mass. 517; Reed v. Reed, 338 P. 2d 350 [Okla.]; Sobel v. Sobel, 46 N. J. Super. 284; see, also, anno. 53 A. L. R. 2d 914).
The court believes that the issuance of an injunction in these situations cannot be predicated on any so-called “natural right ” of a person to have a child bear a particular name for the simple reason that there is no such right. In addition to serving as a means of identifying a person, a name is used to signify a particular relationship between and among people. When that particular relationship is apparent and is threatened with erosion, if not complete destruction, without overriding benefit to the welfare of the infants, those acts which constitute the threat may be enjoined. Where there is no relationship such as where one parent may have “ abandoned ” the child, then obviously that parent has no basis upon which to found a complaint or objection to any conduct. However, even though a very close relationship may be found to exist, the best interests of the infant may dictate withholding injunctive relief to prevent use of a different name where no formal request for one has been sought under the Civil Rights Law. Likewise, the court should not interfere with the choice of an intelligent infant, exercised after proper reflection and deliberation.
From the testimony elicited at the hearing and, after interviewing each of these children, the court recognizes that there is a relationship existing between each of these infants and their father. It varies with each child when viewed from their standpoint, but this is only natural. The father has honored the obligations imposed upon him and has exhibited a strong desire to protect the love and devotion accorded him by his children and to have it increase as each child grows to maturity. Hot only was this desire evident from the verbal expressions of the father but, more importantly, from his actions throughout the period of time he and his wife separated to the present time.
It is understandable that these four children, residing with their mother and stepfather, would gravitate toward acceptance of their mother’s new married name. This is in large measure *424 the result of the divorce and remarriage. However, these children are only 14, 12, 9 and 7 years of age, and while the court was impressed with these youngsters whom both parents can be extremely proud of, the court does not find that anyone of them has reached that position in development where he or she should be permitted to make the decision as to what name he or she should accept or adopt.
Convenience and the presence of some confusion at times are not forceful or compelling reasons for casting aside a vital prop of the parent-child relationship. Until each of these children is able to arrive at a decision based upon more cogent reasons than these, they should be dissuaded from hasty decisions and counseled to indulge in reflection with respect to the wisdom and necessity for such, if any, action.
The court, of course, will not enjoin these children from calling themselves by whatever name they wish. The court, however, does earnestly exhort each of them to indulge in further reflection upon this issue and to discuss it with their father as well as their mother before acting in this regard.
The court is of the opinion that their mother has encouraged the children to adopt a new name and without a doubt she has permitted their names to be listed as changed on the official records of their schools. Until the welfare of these children dictates a change or they reach the position where an observer can say they are able to make a meaningful choice, no official recognition should be given to any change of name. If allowed to remain the result would itself become a compelling reason for its own adoption. Thus, this court will direct the mother to take the necessary stops to have all official records which reflect a new surname changed back to their original listing. The court, however, will not issue any further directions or prohibitions in this proceeding since the court should not intrude upon the privacy of the home of the parties or their right to free and untrammeled discussion and opinion in the matter. The court believes it should act no further.
The petition is granted to the extent indicated and in all other respects it is denied, without costs.