In the matter of the Application of
Kristi Renee TUBBS, To
change her name.

Melvin Lee TUBBS, Appellant,

v.

Sherry Jo HARRISON, Appellee.

No. 52346.

Supreme Court of Oklahoma.

Nov. 25, 1980.

Woody, Pepper & Peacher by David E. Pepper and Nancy Findeiss, Oklahoma City, for appellant.

Rainey, Barksdale & Barksdale by John Barksdale and Bill Barksdale, Okmulgee, for appellee.

OPALA, Justice:

The question for decision is whether the decree changing a minor's name solely on publication service is void for want of personal notice to the father whose whereabouts were known or readily ascertainable and whose paternal rights remained unextinguished. We hold that because the notice given falls short of the minimum standards of due process the trial court should have vacated its decree.

## FACTS

On a petition brought by the mother as the custodial parent and next friend, the trial court changed the surname of an eight–year–old child to that of her stepfather. The decree rests solely on publication service authorized by 12 O.S.Supp. 1976 § 1633.[1] Some six months later the father moved to vacate the decree alleging want of notice. He relied on his unsevered paternal bond as a non–custodial parent who was paying child support and exercising visitation rights under the terms of a prior divorce decree. His present appeal is from the trial court's refusal to set aside the change–of–name decree.

## I.

## THE QUALITY OF NOTICE THAT IS DUE A NON–CUSTODIAL PARENT

It is now firmly settled that a person's legally protected interest may not be adversely affected in a judicial proceeding "unless a method of notification is employed which is reasonably calculated to give him knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard."[2] Notice by publication alone is clearly insufficient vis–a–vis one whose name and address are either known or readily ascertainable from available sources at hand.[3] It is undisputed that at the inception of the change–of–name proceeding the father's whereabouts were known. He was hence entitled to personal notice if a non–custodial father's legally protected interest in the unsevered paternal bond does include within it a claim to the continued use by the child of the surname by which it was known when the parents were divorced. We hold that it does.

Every divorced parent–custodial or not–whose paternal or maternal bond remains unsevered, has a cognizable claim to having his/her child continue to bear the very same legal name as that by which it was known at the time the marriage was dissolved. This ancient, valued and inseparable incident of the parental status, merits not an iota less protection of notice under due process than that which stands extended to the larger interest of a parent in preserving–intact and inviolate–the paternal or maternal bond as a whole. An

1. The terms of 12 O.S.Supp. 1976 § 1633 provide in pertinent part: "Notice of filing of such petition shall be given, in the manner provided for publication notice in civil cases, by publishing the same one time at least ten (10) days prior to the date set for hearing in some newspaper authorized by law to publish legal notices printed in the county where the petition is filed if there be any printed in such county, and if there be none, then in some such newspaper printed in this state of general circulation in that county. * * * ".

2. *Bomford v. Socony Mobil Oil Co.*, Okl., 440 P.2d 713, 718 [1968].

3. *Bomford v. Socony Mobil Oil Co.*, supra note 2 at 718.

award of custody to one parent does not alter the child's existing filial bond with the other parent.[4] The quality of notice that is a person's due is determined by the essential character of the interest sought to be affected rather than by the procedural label ascribed to the case in the context of which the interest happens to be placed in litigation.[5] Personal notice is the parent's due whether the change–of–name issue be at stake in a post–divorce ancillary proceeding,[6] a petition for adoption[7] or in some non–matrimonial variant of a civil action.[8] If this case had been instituted as an adoption–a proceeding in which the child's name is incidentally subject to change–there would be absolutely no doubt as to the quality of notice that was due.[9] Since the legal shield stands extended, with equal force, to the parental surname, which is an important ingredient of the larger right in the continued parent/child bond, there exists no basis for giving notice of less quality in a change–of–name proceeding.

II.

## THE NATURE OF A NON–CUSTODIAL PARENT'S CLAIM TO THE CHILD'S SURNAME

■ It is generally recognized that a father has a protectible claim in the continued use by the child of the paternal surname in accordance with the usual custom, even though the mother may be the custodial parent.[10] The paternal interest has been alluded to by various terms–a natural right,[11] a fundamental right,[12] a primary or time–honored right,[13] a common–law right,[14] a protectible interest[15] and even a legal right.[16] It has been protected by a variety of procedural devices.[17] While the

4. This concept was expressed in *Ross v. Ross*, 201 Okl. 174, 203 P.2d 702 [1949] (syllabus 1) in these articulate words: "A divorce decree, awarding custody of a minor child to the mother, *does not destroy the relationship between father and child.*" [emphasis supplied].

5. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 [1950].

6. *Stoner v. Weiss*, 96 Okl. 285, 222 P. 547, 548 [1924]. A parent's interest in the name of its child is protected in post–decree matrimonial litigation. We so declared in *Reed v. Reed*, Okl., 338 P.2d 350 [1959] where the mother and stepfather had been enjoined by the trial court from imposing the surname of the stepfather on the minor child.

7. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 [1965].

8. *Ross v. Ross*, supra note 4 at 705; the legislature has mandated personal notice to the non-custodial parent in proceedings for a deprived–status adjudication (10 O.S.Supp.1977 § 1104), termination of parental rights (10 O.S.Supp. 1977 § 1131) as well as for guardianship of a person or estate of a minor (58 O.S.1971 § 761).

9. *Armstrong v. Manzo*, supra note 7.

10. *Robinson v. Hansel*, 223 N.W.2d 138 [Minn. 1974]; Anno. 92 ALR3d 1091 [1979], Rights and Remedies of Parents Inter Se with Respect to the Names of their Children.

11. *West v. Wright*, 283 A.2d 401 [Md.1971]; *Worms v. Worms*, 252 Cal.App.2d 130, 60 Cal. Rptr. 88 [1967]; *DeVorkin v. Foster*, 66 N.Y. S.2d 54 [1946]; *Application of Baldini*, 17 Misc.2d 195, 183 N.Y.S.2d 416 [1959].

12. *Young v. Board of Education of City of N. Y.*, 114 N.Y.S.2d 693 [1952].

13. *Application of Shipley*, 26 Misc.2d 204, 205 N.Y.S.2d 581 [1960]; *Schoenberg v. Schoenberg*, 57 N.Y.S.2d 283 [1945] aff'd 269 App.Div. 1048, 59 N.Y.S.2d 280, aff'd 296 N.Y. 583, 68 N.E.2d 874 [1946]; *In re Larson*, 183 P.2d 688 [Cal.1947].

14. *Application of Trower*, 260 Cal.App.2d 75, 66 Cal.Rptr. 873 [1968].

15. *Robinson v. Hansel*, supra note 10; *Ouellette v. Ouellette*, 420 P.2d 613 [Ore.1966]; *Ex parte Taylor*, 322 S.W.2d 309 [Tex.Civ.App. 1959].

16. *Steinbach v. Steinbach*, 119 N.Y.S.2d 708 [1953].

17. *In Application of Hinrichs*, 41 Misc.2d 422, 246 N.Y.S.2d 25 [1964], the court held that the threat of erosion, if not complete destruction of the relationship, to the detriment of the child, was an adequate basis for injunctive relief. See also *Sobel v. Sobel*, 134 A.2d 598 [N.J. 1957]; *Montandon v. Montandon*, 242 Cal. App.2d 886, 52 Cal.Rptr. 43 [1966]; *Kay v. Bell*, 121 N.E.2d 206 [Ohio App.1953]; *DeVorkin v. Foster*, supra note 11; *Mark v. Kahn*, 131 N.E.2d 758 [Mass.1956].

authorities appear somewhat divided,[18] the better view is that a non–custodial father whose paternal bond remains unsevered has a recognized interest in the child's continued use of his surname.[19]

Various courts have taken the position that to deprive a child of his father's surname is a serious and far–reaching action.[20] This is so because a name, in addition to furnishing a means of identifying a person, signifies a particular relationship.[21] The paternal surname is said to have a tendency to identify the relationship between a father and his children whether it is bestowed as a matter of law or centuries–old custom.[22] It has been recognized that change of a child's paternal surname may foster an unnatural barrier between the father and the child and erode a relationship that should be nurtured.[23] Some authorities believe that whenever the parents of a child are divorced and the custody is in the mother, the remaining bond between the father and child is at best tenuous and may be further weakened, if not utterly destroyed, by a change of the minor's surname.[24] Rights in a parental bond have been variously classified as "essential rights", "basic civil rights", "fundamental rights" and "personal rights" more precious than those of property.[25] The interest comprised within the parental bond is the subject of constitutional protection under both the Due Process and Equal Protection Clauses.[26]

18. In *Fulghum v. Paul*, 192 S.E.2d 376 [Ga. 1972], a case factually similar to that at bar, the noncustodial parent challenged the constitutionality of the change–of–name statute since it provided only for service by publication and not personal service upon him as father of the child. The court upheld the constitutionality of the statute on the rationale that no one has a "property interest" in another's name, not even the parent of a minor child. The court acknowledged decisions from other jurisdictions to the effect that a father has a "protectible interest" in having his child bear his surname but held that such interest lacks the attributes of property in the due process sense, because it is merely a custom–based claim. By narrowly limiting the issue to that of a "property" interest, the court did not give consideration to the existence of a protectible "liberty" interest.

In *Schucchi v. Woodruff*, 503 S.W.2d 356 [Tex. Civ.App.1973], the court held that the father had an interest in a change–of–name proceeding and was entitled to notice meeting the standards of the Fourteenth Amendment's Due Process Clause. The court relied on its earlier holding in *Eschrich v. Williamson*, 475 S.W.2d 380 [Tex.Civ.App.1972].

19. *In re Larson*, supra note 13, the court said that while the father may not be a necessary party to a change–of–name proceeding involving his minor child, he was certainly an "interested party" whose interest would be materially affected. As an "interested party", the court said, the father must be held to occupy the status of a "defendant" in the context of the change–of–name statute.

20. *Application of Zipper*, 153 N.Y.S.2d 282, 2 A.D.2d 756 [1956]. The change of a minor's name from that of his father has been said to be such a serious matter which is justified only when it is shown that such change is required for the welfare of the minor. *Lazow v. Lazow*, 147 So.2d 12 [Fla.App.1962].

The court in *Lazow* also held that an adverse effect upon the relationship of a father and his child is a valid ground for a father's objection to a change of his minor child's surname and for a court's refusal to make the change. *Application of Shipley*, supra note 13.

21. *Application of Hinrichs*, supra note 17.

22. In some jurisdictions, the Christian name given a child at birth and the surname of his father or patronymic is deemed his legal name. *Sobel v. Sobel*, supra note 17; *Kay v. Bell*, supra note 17. See also *Application of Trower*, supra note 14. In others, the succession of the paternal surname is considered the usual custom. *West v. Wright*, supra note 11; *Application of Shipley*, supra note 13.

23. *West v. Wright*, supra note 11; *Kay v. Kay*, 112 N.E.2d 562 [Ohio 1953].

24. *Mark v. Kahn*, supra note 17. It has been said that such a change would lend aid to an estrangement of the father from his child, contrary to the best interest of both, and constitute a step toward complete severance of the father–child relationship. *Rounick's Petition*, 47 Pa.D. & C. 71 [1942]; *Application of Shipley*, supra note 13. See also *Kay v. Kay*, supra note 23.

25. *May v. Anderson*, 345 U.S. 528, 533–534, 73 S.Ct. 840, 843, 97 L.Ed. 1221 [1953]; *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 [1972]; *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 [1942]; *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 [1923].

26. *Meyer v. Nebraska*, supra note 25; *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 [1924]; *Skinner v. Oklahoma*,

## CONCLUSION

■ We need not and do not consider here the constitutional validity of § 1633. Nor do we declare that personal notice to some or any person is essential in every change–of–name proceeding. Our pronouncement in this case is far more narrow. We merely hold that a decree changing a minor's surname without personal notice to a living non–custodial parent whose whereabouts are known or are readily ascertainable from available sources at hand and whose paternal or maternal bond remains unsevered falls short of compliance with the minimum standards of due process. Art. 2 § 7, Okl. Con.

■ Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise the defendant of the pendency of an action.[27] The change–of–name decree is hence void for want of due notice to the father. It should have been vacated.

Reversed.

All Justices concur.

---

supra note 25; *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 [1944]; *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 [1967]; *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 [1972]; *Stanley v. Illinois*, supra note 25; *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 [1972]; *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 [1974]; *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 [1977].

**27.** *Bomford v. Socony Mobil Oil Co.*, supra note 2 at 719.